875 F.2d 868
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry TAYLOR, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5427.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1989.
 
 Before ENGEL, Chief Judge, and MERRITT and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a judgment upholding a denial of disability benefits under the Social Security Act, 42 U.S.C. Secs. 301 et seq. For the reasons set forth below, we shall reverse the judgment and remand the case for an award of benefits.
 
 
 2
 * The claimant, Larry Taylor, worked in coal mines for 23 years as an electrician and repairman. He has an eighth grade education. At the time of his hearing before an administrative law judge of the Department of Health and Human Services, he was 44 years old.
 
 
 3
 Mr. Taylor left his employment as a chief electrician on August 20, 1985, after injuring his back. He filed an application for disability insurance benefits on January 30, 1986, alleging that he was disabled due to a ruptured disc, hypertension, and a lung condition. The application was denied both initially and upon reconsideration. Mr. Taylor requested and received a hearing before an administrative law judge. The ALJ received a variety of medical evidence and heard testimony from the claimant and from a vocational expert.
 
 
 4
 Medical records of the Appalachian Regional Hospital showed that Mr. Taylor was admitted to that hospital on August 20, 1985, complaining of severe low back pain and pain radiating down both legs. A discharge summary prepared by Dr. Anbu Nadar after Mr. Taylor's release from the hospital on August 28, 1985, gave a final diagnosis of acute lumbosacral sprain, hypertension, and bronchial asthma. Dr. Nadar wrote that Mr. Taylor's spine was straight but that he had tenderness in the lumbosacral area with paravertebral spasm; his range of motion was limited, and movement was painful. X-rays of the lumbosacral spine showed marked disc space narrowing at the L5-S1 level, with some degenerative changes. Mr. Taylor was reported to have shown steady improvement in the hospital, but he continued to complain of persistent back and leg pain.
 
 
 5
 A chest x-ray taken on October 30, 1985, by Dr. C.H. Williams showed an increase in nodular and irregular fibrosis compatible with pneumoconiosis.
 
 
 6
 Dr. Frank Varney examined Mr. Taylor for pneumoconiosis on December 3, 1985, and reported that Mr. Taylor's complaints of dyspnea, cough, chest pains, and smothering were consistent with pulmonary disease.
 
 
 7
 On January 14, 1986, at his attorney's request, Mr. Taylor was evaluated by a Dr. Sutherland, who found evidence of ILO pneumoconiosis, type p/s, in zones 1 through 6. Dr. Sutherland reported that Mr. Taylor complained to him of a chronic cough and shortness of breath. Dr. Sutherland's pulmonary function report reported an impression of "severe obstructive ventilatory insufficiency." He noted a possibility of "improvement following bronchodilator therapy."
 
 
 8
 In a letter sent to the Kentucky State Division of Disability Determinations on July 29, 1986, Dr. Maximo V. Tan, who claimed that he had known Mr. Taylor since 1982, diagnosed him as suffering from chronic obstructive airway disease, hypertension, hypertriglyceridemia, and low back pain. He also wrote:
 
 
 9
 "Mr. Taylor has severe breathing impairment and working further in the coal mine is not going to help his medical condition in the long run. His activities are very much restricted on account of rapid shortness of breath on physical exertion and in addition to his complain [sic] of persistent low back pain."
 
 
 10
 Under date of June 20, 1986, Dr. Nadar filed a general medical report with the Kentucky Division of Disability Determinations. Dr. Nadar reported that Mr. Taylor's reflexes were within normal limits, but his range of musculoskeletal motion was limited. The doctor's "current diagnosis" was "Herniated disc, L4-5." As to treatment, Dr. Nadar wrote, "surgery has been suggested to the patient, but he is not willing." He also noted that Mr. Taylor was "unable to do any heavy lifting or strenuous work." In a letter dated January 7, 1987, and addressed "To Whom It May Concern," Dr. Nadar said "[i]n my opinion, the patient presently continues to be totally disabled."
 
 
 11
 Dr. William Kennedy, of the Watauga Orthopedic Professional Association, wrote a "To Whom It May Concern" letter on Mr. Taylor under date of April 22, 1986. Dr. Kennedy reported that the range of motion of Mr. Taylor's lumbar spine was 25 percent normal in all directions, and that x-rays showed advanced degenerative changes at the L5 level. He concluded that Mr. Taylor was "temporarily totally disabled," but that it was too early to give a definitive opinion about any permanent physical impairment, in light of the "reasonable chance" that surgery on his back would improve his "overall quality of life." In a subsequent deposition taken by Mr. Taylor's attorney, Dr. Kennedy said that even with surgery he would not expect Mr. Taylor to be able to return to the kind of work he last performed. Dr. Kennedy also said that Mr. Taylor was experiencing "considerable pain," and would continue to have "considerable pain" even after the surgery because "even with the surgery he would still have the degenerative disc disease."
 
 
 12
 Mr. Taylor gave extensive testimony at the hearing. He said that back pain kept him from remaining seated for more than 45 minutes and kept him from standing for more than 15 minutes. He stated that his back problems were the biggest obstacle to going back to work, though his breathing was also a problem. He described his back pain as something that starts in the lower part of his back and shoots down his legs to his feet and toes. He estimated that pills he took to control his pain removed about a third of the pain, with relief lasting four or five hours. He also stated that he spends twelve to thirteen hours per day watching television and could only sleep four or five hours per night.
 
 
 13
 Ms. Ann Jones, a vocational expert, also testified. Given the ALJ's characterization of the exertional limitations faced by the claimant, she stated that there were numerous light jobs which he could perform, such as night watchman, merchant patrolman, and egg handler. On cross-examination, however, she admitted that with the limitations that Mr. Taylor described, he "would have difficulty" performing most of the above jobs.
 
 
 14
 The ALJ applied the following familiar principles:
 
 
 15
 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 CFR 404.1520(b));
 
 
 16
 2. If an individual is not working and is suffering from an impairment which meets the duration requirement and which "meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of 'disabled' " will be made without consideration of vocational factors (20 CFR 404.1520(d));
 
 
 17
 3. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 CFR 404.1520(e));
 
 
 18
 4. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 CFR 404.1520(f)).
 
 
 19
 The rules set out in Appendix 2 of Subpart P of Social Security Regulations No. 4 are considered in determining whether a claimant with exertional impairments is or is not disabled. The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. (20 CFR 404.1545.) If a finding of disability cannot be made based on strength limitations alone, the rules established in Appendix 2 are used as a framework. In cases where the individual has only a nonexertional impairment, a determination as to whether disability exists is to be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in Appendix 2.
 
 
 20
 The ALJ determined that neither Mr. Taylor's back problems nor his respiratory problems qualified as listed impairments as set forth in Appendix 1 of Subpart P. The ALJ then determined, under the third part of the test, that Mr. Taylor could not perform the work he did in the past, which was skilled heavy work. However, he retained the residual functional capacity to perform at least light work. Hence, applying Table No. 2 of Appendix 2 of Subpart P, a finding of "not disabled" was dictated in light of Mr. Taylor's young age, limited education, and previous work experience, including the fact that his skills from his previous job were nontransferable.
 
 II
 
 21
 The ALJ was troubled (as are we) by the written statement of Dr. Kennedy that Mr. Taylor was "temporarily totally disabled." The ALJ dismissed this statement, however, by adding that Dr. Kennedy "indicated that the claimant stands a reasonable chance of gaining considerable improvement in his low back condition and in his overall quality of life by having a decompression of the fourth lumbar disc, either by chemonucleolysis or by surgery." But although it is true that Dr. Kennedy wrote words to that effect in his "To Whom It May Concern" letter of April 22, 1986, in his deposition taken three months later, Dr. Kennedy backed away from this optimistic prediction about the effect of surgery. He stated then that even though surgery might have a "good chance" of relieving some of the pain, Mr. Taylor would still have "considerable pain" because the surgery could not remedy the underlying cause of the pain, the degenerative disc disease. Against that background, Mr. Taylor's reluctance to submit to surgery is certainly understandable.
 
 
 22
 The regulations require that a claimant "follow treatment prescribed by [his] physician if this treatment can restore [his] ability to work." 20 CFR 404.1530. But surgery was never "prescribed" here. It was "suggested" only once by Dr. Nadar, who said that it would afford only a "reasonable chance" of improvement, which might or might not have restored Mr. Taylor's ability to work. Under these circumstances, the ALJ should not have held it against Mr. Taylor that he was unwilling to undergo surgery. Cf. O'Nan v. Secretary of HHS, No. 86-2139, slip op. at 5 (6th Cir. March 25, 1988) ("There can be no question that this lady had a bad back, and we are not prepared to say that she had to submit to the surgeon's knife in order to prove it.").
 
 
 23
 There can be no question that Mr. Taylor had serious back problems. Medical records from his stay in the Appalachian Regional Hospital in August of 1985 showed that he had a limited and painful range of motion in the spine and marked disc space narrowing in the L5-S1 area. Dr. Nadar found in June of 1986 that Mr. Taylor had a herniated disc, rendering him "unable to do any heavy lifting or strenuous work." In his letter of January 7, 1987, Dr. Nadar added that he found Mr. Taylor to be totally disabled.
 
 
 24
 There was substantial objective medical evidence to support Mr. Taylor's other allegations of severe medical difficulties. Dr. Maximo Tan observed that Mr. Taylor had a "severe breathing impairment" and diagnosed him as suffering from severe chronic obstructive airway disease; Dr. Sutherland, likewise, noted that Mr. Taylor suffered from "severe obstructive ventilatory insufficiency." Both Dr. Tan and Dr. Nadar diagnosed Mr. Taylor as having high blood pressure. Finally, Mr. Taylor's extensive subjective complaints of debilitating back pain were supported by the objective medical testimony of Dr. Kennedy, who stated in his deposition that he would reasonably expect a man in Mr. Taylor's position to have "considerable pain," to the extent that "he is preoccupied with the pain most of the time in that he has to adjust the way that he is positioning his body around the pain in an effort to minimize the pain, no matter what he does." See Duncan v. HHS, 801 F.2d 847, 853 (6th Cir.1986) (Pain can be basis for finding of disability, if there is "objective medical evidence of an underlying medical condition," and this condition "is of such a severity that it can reasonably be expected to produce the alleged disabling pain.").
 
 
 25
 The ALJ relied on the testimony of the vocational expert that "the claimant's impairments do not significantly limit his opportunities for gainful light employment," but the vocational expert acknowledged that if Mr. Taylor was experiencing the pain he described at the hearing, "he would have difficulty" performing the jobs she described. Whether Mr. Taylor's back problem or pulmonary disease would be sufficiently severe in and of itself to constitute a listed impairment is immaterial. 20 CFR 404.1523 requires that the "combined effect of all of a claimant's impairments" be considered "without regard to whether any such impairment, if considered separately, would be of sufficient severity." In light of the combination of Mr. Taylor's impairments, no substantial evidence existed to support the finding that Mr. Taylor was not disabled.
 
 
 26
 The judgment of the district court is REVERSED, and the case is REMANDED for entry of a judgment directing an award of benefits.